# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

May 23, 2014

**VIA HAND DELIVERY**

TO BE ~~FILED UNDER SEAL~~
REDACTED

Honorable Loretta A. Preska
Chief United States District Judge
Southern District of New York
United States District Court
500 Pearl Street
New York, New York 10007

Re: <u>United States v. Hector Xavier Monsegur</u>
    <u>11 Cr. 666 (LAP)</u>

Dear Chief Judge Preska:

      We write on behalf of our client, Hector Monsegur, the defendant in the above-referenced case, who is scheduled to be sentenced by the Court on May 27, 2014. We join in the government's anticipated request that the Court sentence Mr. Monsegur pursuant to the factors set forth in U.S.S.G. § 5K1.1(a)(1)-(5) in light of his "extraordinary" assistance. For the reasons set out more fully below, we respectfully request that the Court impose a sentence of time served.

      On August 15, 2011, before Your Honor, Mr. Monsegur pled guilty, pursuant to a cooperation agreement, to a twelve-count information which charged him with various offenses related to computer hacking. He was detained at the MCC from May 25, 2012, until December 17, 2012, at which point he was re-released on bail. Since that time, he has complied with all of the conditions of his release.

      As a result of Mr. Monsegur's "extraordinary cooperation," the government has informed the Court that it will move at sentencing for the Court to sentence Mr. Monsegur in light of the factors contained in U.S.S.G. § 5K1.1(1)-(5), and, pursuant to 18 U.S.C. 3553(e), without regard to any mandatory minimum sentence. See Exh. A at 18 (Gov't Motion, filed May 23, 2014). In anticipation of this motion, the Probation Department recommends a sentence of time

Hon. Loretta A. Preska                          May 23, 2014
Chief United States District Judge              Page 2

Re:  United States v. Hector Xavier Monsegur
     11 Cr. 666 (LAP)

REDACTED

served.[1]

      This is an extraordinary case in several respects, including the round-the-clock, all-consuming nature of Mr. Monsegur's cooperation, the danger it has posed to him and his family, and the enormous benefits – in terms of national security, infrastructure protection, and losses averted – that stemmed from his cooperation.

      Given the nature, extent, and results of Mr. Monsegur's cooperation, as well as the repercussions he and his family have suffered as a result, the defense submits that a sentence of time served is the just and appropriate sentence in this case. Any additional period of incarceration or supervision would be more than necessary to affect the statutory sentencing goals.

**Background**

      Mr. Monsegur was born in           in                , and was raised in the Jacob Riis housing project on Manhattan's Lower East Side. He was raised primarily by his grandmother. His mother had left him with his father when Mr. Monsegur was a young boy and, when he was        , his father was sentenced to state prison. Mr. Monsegur's aunt also was sentenced to prison as part of the same case. She later returned to prison, leaving her two young daughters in the care of her mother, Mr. Monsegur's grandmother, as well.

      In          , Mr. Monsegur's grandmother died from complications related to                                    . Watching his grandmother struggle as her health declined was extremely difficult for Mr. Monsegur. As she got sicker, he withdrew into their apartment, and became more isolated. When she died, it fell to Mr. Monsegur to care for his two young cousins, then       and       years old. That he would care for the girls wasn't even a question. As his father tells the Court, Mr. Monsegur "has always helped the

---

[1] The Probation Department also recommends that the Court impose a three-year term of supervised release. For the reasons discussed more fully below, the defense submits that a term of supervised release is not necessary to affect the statutory sentencing objectives and, in this case, would expose Mr. Monsegur to additional danger. In light of all of the facts and circumstances of this case, the defense submits that a sentence of time served is the just and appropriate sentence.

Hon. Loretta A. Preska  
Chief United States District Judge

May 23, 2014  
Page 3

Re: <u>United States v. Hector Xavier Monsegur</u>  
    11 Cr. 666 (LAP)



family." See Exh. B (Letter from H       M            ). His brother M    explains to the Court that Mr. Monsegur is "the backbone to our family." See Exh. C (Letter from M            ).

The girls were the most important thing in his life. He took their care and well being very seriously. He was involved in their education, walking them to and from school and helping with their homework. The agency that oversaw the girls' foster care placement with Mr. Monsegur regularly evaluated their situation and confirmed that Mr. Monsegur was doing an admirable job as a surrogate parent. He looked out not only for his girls, but for other kids in the neighborhood. As              tells the Court, Mr. Monsegur "always looked out for" her kids and made sure they got to school, too. See Exh. D (Letter from            '). He struggled, though. His grandmother's death had come close on the heels of him losing his job. He struggled to pay the rent and to feed and clothe the girls, and caring for them made it hard for him to look for a job.

If Mr. Monsegur had lived somewhere else, if he had attended a well-funded suburban school with a computer science program or had had the money to attend college, things might have been much different. With his self-taught computer skills and a college degree, he might have maintained a lucrative job that would have enabled him to have child care assistance so he could work and care for the girls.

But Mr. Monsegur was on the Lower East Side, spending his days in a run-down apartment while waiting to pick his young cousins up from school. He was angry and frustrated and desperate. He was also politicized and extremely talented, and, over time, he got more deeply involved in online activism. For example, during the Arab Spring, when he learned that governments were cutting off citizens' internet access, he did what he could to enable access. He was also committed to exposing hypocrisy by uncovering security weaknesses. It frustrated him to see private industries raking in millions of government dollars while not actually providing the security services they boasted about. As he has candidly admitted, some of his online activity was illegal. In his desperation, for example, he paid for household expenses with stolen account information and broke into websites to purchase items for his family. In an attempt to draw attention to their skills, and an immature attempt to get

Hon. Loretta A. Preska
Chief United States District Judge

May 23, 2014
Page 4

Re: <u>United States v. Hector Xavier Monsegur
11 Cr. 666 (LAP)</u>



some laughs, for example, Mr. Monsegur and his group posted a fake news article on PBS.org asserting that the rapper Tupac was alive and well.

On June 7, 2011, almost ____ to the day after his grandmother's death, late at night, FBI agents knocked on the door of his grandmother's apartment on the Lower East Side. As the government has explained to the Court, "Mr. Monsegur admitted his criminal conduct and immediately agreed to cooperate with law enforcement." Exh. A at 6. It was not a difficult choice for him. However strong his political beliefs, his family came first. He would do whatever he had to do to protect the girls and avoid their placement in the foster care system. After this night, his life, and the lives of his family members, would never be the same.

Mr. Monsegur began working around the clock for the FBI. Sometimes, he would sit in computer rooms with agents for eight, ten, twelve hours at a time, reviewing logs and explaining his methods of researching vulnerabilities. Other days, he would sit for hours with prosecutors and agents from around the country, giving information he had on past online activity and helping them understand what had occurred in various computer intrusions they were investigating. This work not only allowed law enforcement to "resolve open investigations into several computer intrusions," see Exh. A at 9-10, but also taught law enforcement information that would assist in future investigations. These full day meetings would end only when he had to leave to pick the girls up from school.

In addition to providing information about past online activities, Mr. Monsegur worked proactively for the FBI. Because the targets of the FBI's investigations often were in other countries, this proactive work required him to work overnight and then spend the next day reviewing the work with agents. The work kept him up at night and bled into every waking hour. He was truly on the clock 24 hours-a-day. The government installed key-logging software on his computer so it could monitor every letter he typed and even installed a camera at his apartment to record his activities. For months, he maintained this virtually non-stop activity on behalf of the government, while still trying to maintain some semblance of order for the girls.

Hon. Loretta A. Preska
Chief United States District Judge

May 23, 2014
Page 5

Re: <u>United States v. Hector Xavier Monsegur</u>
    <u>11 Cr. 666 (LAP)</u>

REDACTED
TO BE FILED
UNDER SEAL

     In August, 2011, Mr. Monsegur consented to the filing of an information that included charges from five districts around the country. He waived venue on the out-of-district charges and pled guilty pursuant to a cooperation agreement. At the time, he waived indictment, the government informed the Court that Mr. Monsegur had "already incurred a significant amount of personal risk by deciding to cooperate." <u>See</u> Exh. E at 8 (Excerpt from August 5, 2011, Transcript).

     For six months following his plea, Mr. Monsegur kept up his round-the-clock proactive cooperation. Over the course of his cooperation, his helped secure evidence that led to the identification of his co-conspirators. He also helped avert national and international crises. For example, information he obtained permitted law enforcement officials to avoid a take-over of the water supply system in a major U.S. city and of a major foreign energy supply company. He helped law enforcement prevent attacks on organizations such as ▓▓▓ and the ▓▓▓, as well as the United States Courts and the United States Congress. He also enabled law enforcement to determine that an alleged take-over of the United States energy grid was a hoax. His work not only enhanced national security, but it prevented millions, if not billions, of dollars in loss.

     Then, on March 6, 2012, Mr. Monsegur's world came crashing down again. In a multi-national law enforcement effort, based on information he had provided, agents affected the arrests of his LulzSec co-conspirators and others. In part because of the "important deterrent effect" law enforcement hoped to gain through news of Mr. Monsegur's arrest and cooperation, the government requested that documents related to Mr. Monsegur's plea be unsealed and "his work as a cooperating witness was made public shortly after the arrest of the core LulzSec members." <u>See</u> Exh. A at 17. The government's press release announcing the arrests also announced Mr. Monsegur's arrest and plea. <u>See</u> Exh. F (USAO Press Release, March 6, 2012). Although the press release did not confirm Mr. Monsegur's status as a cooperator, government officials did so in off-the-record interviews with the press. Early on the morning of March 6, news pieces that had been prepared in advance, chronicling Mr. Monsegur's life and the details from the night of his arrest known only to those who were present, appeared online. By the end of the day, news outlets

Hon. Loretta A. Preska
Chief United States District Judge

May 23, 2014

Re:  **United States v. Hector Xavier Monsegur**
     **11 Cr. 666 (LAP)**



**REDACTED**
TO BE FILED
UNDER SEAL

around the world had his picture and his story on the front page.

The next day, things got even worse. Mr. Monsegur's cooperation was all over the morning papers. As the government well knows, the scrutiny Mr. Monsegur and his family were subjected to was something that few cooperating witnesses must cope with until shortly before trial, if at all. But the scrutiny was not merely unpleasant. It threatened to have serious consequences for the family. Early on the morning of March 7, Mr. Monsegur was contacted by the agency that oversaw the girls' foster care placement. This was his worst nightmare, the very thing he had sought to avoid through his cooperation. The agency told him that it was coming to get the girls and was possibly going to remove them from his custody and place them with strangers. The family converged at the Federal Defenders office and together we traveled to the agency to explain the situation and plead for the girls to remain with family. For several frantic hours, officials held closed-door and telephone meetings and the girls were subjected to examinations and evaluations. Finally, that evening, arrangements were approved that accelerated the return of the girls to the custody of their mother, who had recently been released from prison.

Following the barrage of publicity, Mr. Monsegur could not even return home. His face was plastered all over the internet. The personal information of his family members, including their home addresses and social security numbers, were distributed online. While the technical details of his hacking activities may have passed under the radar on the Lower East Side, the concept of "snitching" did not. Shortly after news of his cooperation was made public, the NYPD conducted a drug raid near Mr. Monsegur's home. This NYPD activity had nothing whatever to do with Mr. Monsegur. But he was accused of snitching in relation to that raid and he and his family were threatened. Mr. Monsegur's younger brother, who stood by his side every day throughout the whole ordeal, was threatened and actually physically attacked because of Mr. Monsegur's cooperation. As the government explains to the Court, "the threat to [Mr.] Monsegur and his family became severe enough that the FBI relocated [Mr.] Monsegur and certain of his family members." Exh. A at 17.

His months of round-the-clock work and the crushing publicity took its toll on Mr. Monsegur. In the spring of 2012, Mr.

Hon. Loretta A. Preska
Chief United States District Judge

May 23, 2014
Page 7

Re:   United States v. Hector Xavier Monsegur
      11 Cr. 666 (LAP)

**REDACTED**
**TO BE FILED**
**UNDER SEAL**

Monsegur made some unauthorized online posts and the government moved for his remand. He was detained at the MCC from May 25, 2012, until December 17, 2012, at which point he was re-released on bail. While at the MCC, he tried to make the most of his time. He read voraciously. He created and taught a five-week Computing Essentials course designed to teach other incarcerated persons the digital tools needed to analyze, synthesize and evaluate information. Attached as Exhibit G is a copy of the syllabus he created.

Since his release in December 2012, Mr. Monsegur has been fully compliant with the terms of his release. He has spent eighteen months waiting in limbo for his sentencing, attending occasional meetings with counsel and with law enforcement. He has looked for work but repeatedly has been rejected, due to lack of job openings and this open case. When applying for jobs, he has been questioned about his cooperation. He currently is prohibited by his conditions of release from using a computer, and this restriction has greatly hampered his job search ability.

Mr. Monsegur has incredible computer skills that he can put to good use. He would like to use his skills as both a systems administrator and as a teacher. As his friend            puts it, Mr. Monsegur is "truly a great asset to the human race as a whole." See Exh. H (Letter from            ).

But he will forever be marred by this case. Even this week, while he was at a gas station with a friend, Mr. Monsegur was identified by drivers in the next car who called out to him while looking at information about him on their smartphones. The extraordinary publicity that came along with his cooperation will follow him forever.

**A Sentence of Time Served is Appropriate**
**In Light of Mr. Monsegur's "Substantial Assistance"**

As the government notes in its May 23, 2014 letter, in arriving at the appropriate sentence for a defendant who has provided substantial assistance, Section 5K1.1 of the Sentencing Guidelines encourages Courts to consider, inter alia:  the significance and usefulness of a defendant's assistance; the truthfulness,

Hon. Loretta A. Preska
Chief United States District Judge

May 23, 2014
Page 8

Re:   **United States v. Hector Xavier Monsegur**
      **11 Cr. 666 (LAP)**

**REDACTED**
**TO BE FILED**
**UNDER SEAL**

completeness and reliability of the information provided; the nature and extent of the assistance; any injury or risk of injury suffered by the defendant or his family; and the timeliness of a defendant's assistance. The defense submits that an individualized assessment of these factors counsels in favor of a sentence of time served.

Mr. Monsegur's assistance was significant and useful. Indeed, the government describes it as "extraordinarily valuable and productive." Exh. A at 13. He provided "unprecedented" access to the targets of law enforcement investigations through both "historical information and substantial proactive cooperation." Id. His efforts led directly to the identification, prosecution and convictions of seven individuals as well as the identification and prosecution of an eighth who awaits trial. Id. at 14-15. While these arrests and convictions were "extremely important to the Government," they "only partially convey[] the significance and utility of [Mr. Monsegur's] cooperation." Id. at 15. By providing information to law enforcement regarding on-going or threatened computer hacks as well as existing vulnerabilities in computer systems, "the FBI was able to thwart or mitigate at least 300 separate hacks." Id. As the government explains to the Court, "[t]he amount of loss prevented by [Mr.] Monsegur's actions is difficult to fully quantify, but even a conservative estimate would yield a loss prevention figure in the millions of dollars." Id. Perhaps more important than the dollar value of Mr. Monsegur's cooperation, information he provided allowed law enforcement to proactively secure vulnerabilities in "critical infrastructure," including the water supply of a major U.S. city and the supply chain of a foreign energy supply company. Finally, the significance and utility of his cooperation will last far into the future. For example, the last piece of his cooperation involved repeated real-time efforts to secure evidence that firmly links a subject (whom multiple countries have expressed interest in prosecuting) to the solicitation of cyber attacks on foreign government computer systems. Although these efforts have not yet led to prosecution of the subject, they yielded "significant and valuable" evidence. Id. at 16.

Mr. Monsegur provided the government with truthful, reliable, and complete information. As the government explains in its letter, Mr. Monsegur was "fully candid" with law enforcement and provided information that was "consistently reliable and complete,

Hon. Loretta A. Preska
Chief United States District Judge

May 23, 2014
Page 9

Re:  United States v. Hector Xavier Monsegur
     11 Cr. 666 (LAP)


REDACTED
TO BE FILED
UNDER SEAL

corroborated by documents and electronic files, as well as by statements from other witnesses." Exh. A at 16.  The candid information he provided regarding his own criminal conduct went beyond information that had been available to the government and included information about offenses the government likely would have remained unable to prove, and may not even have discovered, absent his candor.

    The nature of Mr. Monsegur's assistance was varied and extensive, both in time - it lasted three years - and in subject matter - he worked with agents and prosecutor from various districts to close pending investigations, prevent future attacks, and gather information that lead to several arrests and convictions.  As the government tells the Court, Mr. Monsegur's "cooperation entailed many multi-hour meetings with FBI agents that extended into the late evening and early morning hours." Exh. A at 16.  As discussed above, he not only sat with law enforcement to review historical information, he engaged in round-the-clock online activity at the direction of law enforcement.  His activity had to be precisely coordinated with law enforcement officials in different cities and, at times, different countries.  He sat through lengthy proffer sessions with law enforcement officials from around the country, often being asked to spend hours and hours reviewing information he had previously discussed with officials from other jurisdictions.

    The defense submits that the publicity surrounding Mr. Monsegur's cooperation makes the nature and extent of his cooperation unique.  Most cooperators in this district have their plea agreements sealed and their cooperation is not revealed until either the eve of a trial at which their testimony is required or their own sentencing proceedings.  Mr. Monsegur's cooperation was very different.  More than two years ago, Mr. Monsegur's cooperation was publicly revealed, not because his testimony was needed or for sentencing purposes, but for law enforcement purposes.  As mentioned above, Exhibit F is a copy of the press release issued by the United States Attorney's Office for the Southern District of New York on the morning of the arrest of several of Mr. Monsegur's co-conspirators.  Although the press release did not name him as a cooperator, it did single him out as having pled guilty months earlier and informed the press that the documents related to Mr. Monsegur's plea had been unsealed.  These documents, of course, revealed his

Hon. Loretta A. Preska
Chief United States District Judge

May 23, 2014

REDACTED

Re: **United States v. Hector Xavier Monsegur**
     **11 Cr. 666 (LAP)**

TO BE FILED
UNDER SEAL

cooperation. This public outing of Mr. Monsegur's cooperation was unprecedented in our experience. Where generally the government does all it can to protect the identities of cooperators, here, the government sought a deterrent effect by allowing Mr. Monsegur's cooperation to be publicized. While all cooperators understand that there may come a time when their cooperation is no longer secret, this case was unique in that the government itself participated in his unveiling.

All of Mr. Monsegur's cooperation was undertaken at great risk to him and his family.[2] All of his family gave up a certain amount of privacy as a result of the camera that was installed at Mr. Monsegur's home. Attached as Exhibit J is an example of the type of information about Mr. Monsegur's family that has been published online. Although the information released online has not always been accurate, it often has been. Mr. Monsegur's own residence, as well as the home addresses of _____ was released online. His _____

One of _____ was cornered by a reporter and questioned until _____ caved and gave the reporter what the reporter came for: information related to Mr. Monsegur and his arrest. Of course, _____ did not fully understand the details of Mr. Monsegur's case, but still was subjected to questioning. As the government mentions in its letter to the Court, the girls Mr. Monsegur cared for also were approached by the press. A reporter actually entered their school and attempted to question them about Mr. Monsegur, in clear violation of the school security policy. These events were traumatic for the whole family, not only for the invasion of privacy they represented, but also for the fear it placed in everyone: if the kids in the family were being hounded in their elementary schools and in apartment hallways, no one felt safe. Sadly, it is this fear that deters Mr. Monsegur's family from being by his side in Court. They don't want to subject the children to further publicity.

Of course, the risk to Mr. Monsegur and his family was far

---

[2] In light of the continuing risk of retaliation against Mr. Monsegur and his family, including the young children, the defense requests that this letter and the documents associated with Mr. Monsegur's sentencing be filed under seal.

Hon. Loretta A. Preska
Chief United States District Judge

REDACTED

Re:   **United States v. Hector Xavier Monsegur**
      **11 Cr. 666 (LAP)**

TO BE FILED
UNDER SEAL

more dangerous than that posed by certain members of the press. One of Mr. Monsegur's brothers was physically assaulted at a bar in New York in retaliation for Mr. Monsegur's cooperation. This retaliation was not on behalf of any particular person against whom Mr. Monsegur cooperated, but was retaliation for his role as a cooperator in general. And as recently as this spring, front-page news coverage has contained erroneous reports regarding Mr. Monsegur and attacks on foreign governments. This type of publicity, even when it is incorrect, exposes Mr. Monsegur to real danger and, sadly, shows no sign of abating. This all underscores the fact that the publicity surrounding his cooperation placed Mr. Monsegur at unusual risk.

Finally, Mr. Monsegur's cooperation was timely. It began immediately after agents approached him, even before he had a chance to consult with an attorney. As the government explains in its motion, Mr. Monsegur's timely decision to cooperate prevented the destruction of evidence, allowed the government to develop the evidence necessary for several successful prosecutions, helped prevent and mitigate hundreds of hacks, and established proof that a significant subject of global law enforcement efforts had been soliciting cyber attacks against a foreign government. Exh. A at 18. Had he not made the decision to cooperate and resumed his online activities immediately, none of this may have happened. His "immediate decision to cooperate was thus particularly important." Id.

Mr. Monsegur has been punished tremendously for his offenses. Next week will mark three years that he has been under law enforcement supervision. He served seven months at the MCC.[3] He lived under constant law enforcement surveillance for months. His conduct since his release from custody in December 2012 makes clear that no further period of supervision is necessary. Given the threatened retaliation he has faced, as well as the relentless pursuit by the press, requiring Mr. Monsegur to report to probation

---

[3]   As the government details in its motion, Mr. Monsegur's LulzSec co-conspirators received sentences ranging from probation to 30 months' incarceration. The individual the government describes as "the FBI's most wanted cybercriminal in the world," who had a similar, prior conviction, received a sentence of 120 months' incarceration following a plea to a charge that covered conduct that occurred after Mr. Monsegur's arrest.

Hon. Loretta A. Preska
Chief United States District Judge

**REDACTED**

May 23, 2014
Page 12

Re:  **United States v. Hector Xavier Monsegur**
     **11 Cr. 666 (LAP)**

TO BE FILED
UNDER SEAL

for supervision would only continue to place him at risk. It would also be greater punishment than is necessary. He has worked tirelessly to right his wrongs, to repay his debt to society. No further punishment is necessary to affect the statutory sentencing objectives.

Given the particular circumstances of this case, and in light of the factors contained in U.S.S.G. § 5K1.1, the defense submits that a sentence of time served is the appropriate sentence to affect these statutory directives.

## Conclusion

Mr. Monsegur has provided tremendously valuable assistance to the government. Governments around the world will benefit from his work for years to come. He helped avert at least millions of dollars worth of damage to computer systems around the world. He gave everything he had had – all of his time, all of his energy, all of his skills – to righting his wrongs, all while subjecting himself and his family to retaliation and public humiliation that will follow them forever.

He remains a very dedicated and loyal man, one who believes that the internet can be used to enhance freedoms and share knowledge. He has the skills to help any company or government secure their systems and prevent intrusions. His own life has been on hold for the three years since his arrest. A sentence of time served will acknowledge the extraordinary substantial assistance Mr. Monsegur provided and will allow him and his family to move on to safer, productive lives.

Hon. Loretta A. Preska  
Chief United States District Judge  

May 23, 2014  
Page 13

Re: <u>United States v. Hector Xavier Monsegur</u>  
11 Cr. 666 (LAP)

TO BE FILED  
UNDER SEAL

[REDACTED stamp]

    In light of all of the facts and circumstances of this case, the defense respectfully requests that the Court sentence Mr. Monsegur to time served.

Respectfully submitted,

*[signature]*

**PEGGY CROSS-GOLDENBERG**  
**PHILIP WEINSTEIN**  
Assistant Federal Defenders  
(212) 417-8732/8744

cc: AUSA James J. Pastore, Jr.